Nos. 23-15650, 24-1979

# In the
# United States Court of Appeals
# for the Ninth Circuit

———————————————

ANDREW HARRINGTON, *ET AL.*,
*Plaintiffs-Respondents*

v.

CRACKER BARREL OLD COUNTRY STORE INCORPORATED,
*Defendant-Petitioner*

———————————————

On Appeal from the United States District Court for the
District of Arizona
Case No. No. 2:21-cv-00940-DJH
Hon. Diane J. Humetewa, Presiding

———————————————

# APPELLANT'S CONSOLIDATED
# OPENING BRIEF

———————————————

## CONSTANGY, BROOKS, SMITH & PROPHETE LLP

Steven B. Katz (Cal. Bar No. 139078)*
  skatz@constangy.com
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile: (424) 465-6630

James M. Coleman  (Va. Bar No. 27379)*
  jcoleman@constangy.com
Jason D. Friedman (Md. Bar No. 18898)*
  jfriedman@constangy.com
12500 Fair Lakes Circle, Suite 300
Fairfax, Virginia 22033-3804
Telephone: (571) 522-6111
Facsimile: (571) 522-6101

COUNSEL FOR PETITIONER CRACKER BARREL
OLD COUNTRY STORE INCORPORATED

* Admitted in the Ninth Circuit.

# CORPORATE DISCLOSURE STATEMENT

Under FED. R. APP. PROC. 26.1, Petitioner certifies that it is a nongovernmental corporation and that the following publicly-owned companies own more than 10% of its stock: BlackRock, Inc. and Vanguard Group, Inc.

By: ____*s/Steven Bernard Katz*_____
COUNSEL FOR PETITIONERS

11335098v2

# TABLE OF CONTENTS

*PAGE*

CORPORATE DISCLOSURE STATEMENT ................................................... 2

TABLE OF CONTENTS ............................................................................. 3

TABLE OF AUTHORITIES ...........................................................................

STATEMENT OF JURISDICTION ................................................................ 11

SUMMARY OF APPEAL ........................................................................... 12

ISSUES PRESENTED ............................................................................... 15

STANDARD OF REVIEW ......................................................................... 17

RELATED CASES ................................................................................... 18

STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................. 19

    I.   THE DISTRICT COURT DISMISSED THE ORIGINAL COMPLAINT BECAUSE ALL NAMED PLAINTIFFS AGREED TO ARBITRATION .... 19

    II.  THE DISTRICT COURT DISMISSED THE AMENDED COMPLAINT BECAUSE IT LACKED PERSONAL JURISDICTION OVER ANY OF THE NEW NAMED PLAINTIFFS ............................................................. 19

STATUTORY BACKGROUND AND KEY DECISIONS .................................... 24

    I.   THE FAIR LABOR STANDARDS ACT'S SILENCE ON THE PROPER MECHANISM FOR DETERMINING "SIMILARLY SITUATED" EMPLOYEES .................................................................................. 24

    II.  THE SUPREME COURT'S 2017 *BRISTOL-MYERS* DECISION .......... 25

ARGUMENT ............................................................................................ 27

    I.   THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA BY APPLYING *LUSARDI'S* "MODEST" TWO-STEP MECHANISM INSTEAD OF "RIGOROUSLY ENFORC[ING] THE SIMILARLY SITUATED REQUIREMENT" OF THE STATUTE AS HELD BY THE FIFTH CIRCUIT IN *SWALES* ............................................. 29

A. NEITHER THE FLSA NOR SUPREME COURT PRECEDENT MANDATE A PARTICULAR STANDARD TO DETERMINE IF PARTIES ARE "SIMILARLY SITUATED" UNDER THE FLSA ..... 30

B. THE TWO-STEP COLLECTIVE CERTIFICATION APPROACH IS OUTDATED AND FAILS TO ACCOUNT FOR SUPREME COURT CONCERNS OVER UNDUE SETTLEMENT PRESSURE ............. 32

C. TWOMBLY/IQBAL MARKED A SHIFT IN HOW COURTS MUST SCRUTINIZE ALLEGATIONS AND FILINGS IN THE INITIAL STAGES OF MASS ACTIONS.................................................. 37

D. THE LUSARDI APPROACH ALSO CONFLICTS WITH THE SUPREME COURT MANDATE IN ENCINO MOTORCARS, LLC V. NAVARRO TO INTERPRET THE FLSA WITH A "FAIR READING" ............................................................. 38

E. BECAUSE COURTS IN THIS CIRCUIT MUST EVALUATE THE FAIRNESS OF PROPOSED FLSA SETTLEMENTS BEFORE APPROVAL, THEY MUST RIGOROUSLY ENFORCE THE "SIMILARLY SITUATED" LANGUAGE OF THE FLSA .............. 40

F. THE COURT SHOULD ADOPT THE SWALES APPROACH TO ALIGN THE LAW WITH THE PLAIN MEANING OF THE STATUTE AND SUPREME COURT PRECEDENT ....................... 41

II. THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA TO INDIVIDUALS WHOSE CLAIMS DO NOT ARISE FROM CRACKER BARREL'S ARIZONA CONDUCT AND OVER WHOM THE DISTRICT COURT LACKS SPECIFIC PERSONAL JURISDICTION.............................................................. 46

A. PERSONAL JURISDICTION MUST BE ESTABLISHED IN ALL CASES AS TO ALL CLAIMS.................................................... 48

B. THE UNDERLYING FEDERAL STATUTE DOES NOT PROVIDE FOR NATIONWIDE SERVICE OF PROCESS ............................. 51

C. THE COURT SHOULD NOT AUTHORIZE § 216(B) NOTICE TO POTENTIAL OPT-INS WHOSE CLAIMS DO NOT STEM FROM ARIZONA ACTIVITIES ............................................................. 53

4

1. FLSA OPT-IN PLAINTIFFS ARE NOT MEANINGFULLY DISTINGUISHABLE FROM THE MASS TORT PLAINTIFFS IN *BRISTOL-MYERS* ........................................................... 57

2. *BRISTOL-MYERS'* ANALYSIS OF STATE CLAIMS IN STATE COURT APPLIES EQUALLY TO THE FLSA ....................... 58

3. FLSA OPT-IN PLAINTIFFS REMAIN FREE TO FILE CLAIMS WHERE PERSONAL JURISDICTION MAY BE PROPERLY ESTABLISHED ................................................ 60

4. *BRISTOL-MYERS* PRECLUDES NATION-WIDE FLSA CERTIFICATION .............................................. 61

III. THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA TO INDIVIDUALS WHOM THE DISTRICT COURT ALREADY DETERMINED TO BE BOUND BY AN ENFORCEABLE ARBITRATION AGREEMENT ................................ 61

A. SECTION 216(B) NOTICE SHOULD NOT BE SENT TO INDIVIDUALS WHO CANNOT PARTICIPATE IN THE LAWSUIT . 63

B. SENDING § 216(B) NOTICE TO THOSE INDIVIDUALS BOUND BY AN ARBITRATION AGREEMENT OFFENDS THE FEDERAL ARBITRATION ACT ............................................... 65

IV. THE DISTRICT COURT ERRED IN ALLOWING AN ADULT TO REPUDIATE A CONTRACT SIGNED AS A MINOR OVER 18 MONTHS AFTER TURNING THE AGE OF MAJORITY ................................... 67

A. PUBLIC POLICY AND EQUITY SUPPORT ENFORCING BASCH'S ARBITRATION AGREEMENT .................................... 68

B. BASCH'S DELAY OF MORE THAN 18 MONTHS IS "UNREASONABLE" ............................................ 70

CONCLUSION .................................................... 72

CERTIFICATE OF COMPLIANCE ................................... 74

CERTIFICATE OF SERVICE ....................................... 75

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Arizona E. R. Co. v. Carillo,*
17 Ariz. 115, 149 P. 313 (1915) ........................................................ 68

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 33

*Bayles v. American Med. Response of Colo., Inc.,*
950 F. Supp. 1053 (D. Colo. 1996) ................................................ 39

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. *Passim*

*Bigger v. Facebook, Inc.,*
947 F.3d 1043 (7th Cir. 2020) ....................................................... 65

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975) ........................................................................ 35

*BNSF Ry. Co. v. Tyrrell,*
581 U.S. 402 (2017) ........................................................................ 52

*Bobby Floars Toyota, Inc. v. Smith,*
48 N.C. App. 580, 269 S.E.2d 320 (N.C. 1980) ........................ 70, 72

*Bone v. XTO Energy, Inc.,*
561 F. Supp. 3d 1132 (D.N.M. 2021) ............................................ 56

*Bristol-Myers Squibb Co. v. Superior Ct. of California,*
*San Francisco Cnty.,* 582 U.S. 255 (2017) .............................. *Passim*

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ........................................................................ 48

*Bushley v. Credit Suisse First Boston,*
360 F.3d 1149 (9th Cir. 2004) ....................................................... 17

*Camp v. Bimbo Bakeries USA, Inc.,*
2020 WL 1692532 (D.N.H. Apr. 7, 2020) ..................................... 56

*Campbell v. City of Los Angeles,*
903 F.3d 1090 (9th Cir. 2018) .................................................. *Passim*

*Canaday v. Anthem Cos., Inc.,*
9 F.4th 392 (6th Cir. 2021) ..................................................... 25, 55

*Carlson v. United Nat. Foods, Inc.,*
2021 WL 3616786 (W.D. Wash. Aug. 14, 2021) .......................... 56

11335098v2

*Carpenter v. Knollwood Cemetery*,
  198 F. 297 (D. Mass. 1912) ...................................................24

*Century 21 Real Est. LLC v. Century Sur. Co.*,
  300 F. App'x 527 (9th Cir. 2008)........................................63

*Chavira v. OS Restaurant Servs., LLC*,
  2019 WL 4769101 (D. Mass. Sept. 30, 2019)........................56

*Clark v. A&L Homecare & Training Ctr., LLC*,
  68 F.4th 1003 (6th Cir. 2023) .............................................44

*Conley v. Gibson*,
  355 U.S. 41 (1957)..............................................32, 33, 34

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) .............................................12

*Dominguez v. Better Mortg. Corp.*,
  2022 WL 17216831 (C.D. Cal. Oct. 24, 2022).......................35

*Droesch v. Wells Fargo Bank, N.A.*,
  2021 WL 2805604 (N.D. Cal. July 6, 2021) ...................64, 65

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
  885 F. Supp. 2d 894 (S.D. Ill. 2012)............................70, 71

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..........................................66, 67

*Fed. Trade Comm'n v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020)...............................................17

*Fischer v. Fed. Express Corp.*,
  42 F.4th 366 (3d Cir. 2022)................................................54

*Gaffers v. Kelly Servs., Inc.*,
  900 F.3d 293 (6th Cir. 2018)..............................................67

*Goldowsky v. Exeter Fin. Corp.*,
  2021 WL 695063 (W.D.N.Y. Feb. 23, 2021).........................56

*Go-Video, Inc. v. Akai Elec. Co.*,
  885 F.2d 1406 (9th Cir. 1989)............................................59

*Greinstein v. Fieldcore Servs. Sols., LLC*,
  2020 WL 6821005 (N.D. Tex. Nov. 20, 2020) ................56, 61

*Hendricks v. Bank of Am., N.A.*,
  408 F.3d 1127 (9th Cir. 2005).............................................49

*Herbal Brands, Inc. v. PhotoPlaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023) .............................................50

*Hodapp v. Regions Bank*,
  2020 WL 7480562 (E.D. Mo. Dec. 18, 2020).......................56

7

11335098v2

*Hoffman-La Roche, Inc. v. Sperling*,
  493 U.S. 165 (1989) ......................................................................Passim

*Hutt v. Greenix Pest Control, LLC*,
  2020 WL 6892013 (S.D. Ohio Nov. 24, 2020) ......................................56

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ........................................................................48

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ........................................................................49

*Kelly v. Furlong*,
  194 Minn. 465, 261 N.W. 460 (Minn. 1935) ........................................72

*Kurtz v. RegionalCare Hosp. Partners, Inc.*,
  2021 WL 6246619 (E.D. Wash. Sept. 9, 2021) ....................................56

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D. N.J. 1987) ............................................ 15, 22, 31, 32

*Maclin v. Reliable Reports of Tex., Inc.*,
  314 F. Supp. 3d 845 (N.D. Ohio 2018) ..................................................56

*McNutt v. Swift Transp. Co. of Ariz.*, LLC,
  2020 WL 3819239 (W.D. Wash. July 7, 2020)...................56, 58, 60, 62

*Meghrig v. KFC W., Inc.*,
  516 U.S. 479 (1996) ........................................................................61

*Murphy v. Labor Source, LLC*,
  2020 WL 3633234 (D. Minn. Mar. 12, 2020) ......................................56

*NewGen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) ..............................................................34

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
  484 U.S. 97, (1987) ........................................................................25

*OneBeacon Ins. Co. v. Haas Indus., Inc.*,
  634 F.3d 1092 (9th Cir. 2011)) ............................................................17

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ........................................................................49

*Sandbergen v. Ace Am. Ins. Co.*,
  2019 WL 13203944 (N.D. Cal. June 17, 2019) ....................................65

*Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*,
  957 F. Supp. 150 (N.D. Ill. 1997)....................................................68, 70

*Shi Yong Li v. 6688 Corp.*,
  2013 WL 5420319 (S.D.N.Y. Sept. 27, 2013)......................................36

*St. Paul Fire & Marine Ins. Co. v. Muniz*,
  19 Ariz. App. 5, 504 P.2d 546 (1972) ..................................................68

11335098v2

*Stover v. Experian Holdings, Inc.*,
  978 F.3d 1082 (9th Cir. 2020)........................................................17
*Swales v. KLLM Transport Services*, L.L.C.,
  985 F.3d 430 (5th Cir. 2021)....................................................*Passim*
*U.S. v. Marguet-Pillado*,
  648 F.3d 1001 (9th Cir. 2011).......................................................62
*Vallone v. CJS Solutions Grp., LLC*,
  437 F. Supp. 3d 687 (D. Minn. 2020)............................................56
*Walden v. Fiore*,
  571 U.S. 277 (2014)..............................................................52, 53
*Weeks v. Matrix Absence Mgmt. Inc.*,
  494 F. Supp. 3d 653 (D. Ariz. 2020)........................................53, 63
*Weirbach v. Cellular Connection, LLC*,
  478 F. Supp. 3d 544 (E.D. Pa. 2020)........................................56, 61
*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
  556 F.2d 406 (9th Cir. 1977)........................................................60
*White v. Steak N Shake Inc.*,
  2020 WL 1703938 (E.D. Mo. Apr. 8, 2020).................................56
*Wiggins v. Jedson Eng'g, Inc.*,
  2020 WL 6993858 (E.D. Tenn. Aug. 27, 2020)...........................56
*Wynn v. National Broadcasting Co., Inc.*,
  234 F. Supp. 2d 1067 (C.D. Cal. 2002).......................................39
*Ziegler v. Indian River County*,
  64 F.3d 470 (9th Cir. 1995)........................................................49

STATUTES

9 U.S.C. § 16(a)(1)(C)............................................................11, 18
28 U.S.C. § 1292(a)(1)..................................................................11
29 U.S.C. § 206(a)(1), 207(a)(3)....................................................24
29 U.S.C. § 216(b).................................................................*Passim*
29 U.S.C. § 251..............................................................................24
29 U.S.C. § 256(b)..........................................................................58
U.S.C. § 1292(a)(1)........................................................................18

RULES

Fed. R. App. Proc. 5(c)(1).............................................................76
Fed. R. App. Proc. 26.1...................................................................2

9

Fed. R. App. Proc. 32(a)(5)(A) .................................................................. 76

Fed. R. App. Proc. 32(f) ............................................................................ 76

Fed. R. Civ. P. 4(k)(1)(A) ................................................... 53, 54, 59, 60

OTHER AUTHORITIES

5 Samuel Williston & Richard A. Lord, A Treatise on the Law of
  Contracts § 9:14 (4th ed. 1993 & Supp. 2011) ..................................... 71

# STATEMENT OF JURISDICTION

Appellant-Defendant Cracker Barrel Old Country Store, Incorporated appeals an Order of the District of Arizona denying Cracker Barrel's Motion to Dismiss and Compel Arbitration and partially granting Appellee-Plaintiffs Andrew Harrington, Katie Liammaytry, Jason Lencerht, and Dylan Basch Motion for Conditional Certification (hereafter the "Order").[1]  This Court has jurisdiction over the part of the appeal related to denial of the motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(C) . The Court has jurisdiction over the rest of the appeal under 28 U.S.C. § 1292(a)(1), following the granting of Cracker Barrel's § 1292(b) petition by this Court on March 26, 2024.

---

[1] The "Order" is included in the Excerpts of Record (ER), p. 6-33. All citations to docket entries not included in the Excerpts are from the district court action, *Gillespie, et al., v. Cracker Barrel Old Country Store, Incorporated*, No. 21-cv-00940.

11

# SUMMARY OF APPEAL

The Supreme Court and this Court agree that named plaintiffs may use §216(b) of the Fair Labor Standards Act (FLSA) "to send notice to all *potential plaintiffs*." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000) (emphasis added) (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). The district court, however, erred in authorizing notice to over 100,000 individuals, approximately 97% of whom are not "potential plaintiffs." These individuals, who the district court has already ruled are not "potential plaintiffs" fall into two categories: (1) individuals whom the court determined cannot participate in the litigation because they have signed a valid and enforceable Arbitration Agreement as an adult, and (2) individuals who cannot participate because their claims have no ties to the forum state of Arizona and therefore they cannot establish specific personal jurisdiction. Respectfully, this Court should correct this error by instructing the district court (1) not to authorize notice to individuals whom the court determined are bound to arbitrate their claims and (2) by applying the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S.

12

255 (2017) to the FLSA—thereby only authorizing notice to those individuals who can establish specific personal jurisdiction in the forum state.

Additionally, the Court should take this opportunity to clarify the appropriate mechanism for determining if individuals are "similarly situated" under 29 U.S.C. § 216(b). The district court used a two-step mechanism found nowhere in the text of the FLSA or in Supreme Court precedent. This method is riddled with flaws and the only two Circuits to consider its propriety (the Fifth and Sixth) have rejected it. The Court should adopt the standard the Fifth Circuit proffered in *Swales v. KLLM Transport Services*, L.L.C., 985 F.3d 430, 443 (5th Cir. 2021), and instruct the district court to "rigorously enforce" the "similarly situated" language of § 216(b).

Finally, the district court erred by allowing named plaintiff Basch to repudiate the Arbitration Agreement he signed over 3 years after he signed it, and over 18 months after turning the age of majority. Allowing such repudiation flies in the face of the Federal Arbitration Act's (FAA) public policy and equity, since Basch enjoyed the benefits of the Arbitration Agreement—continued employment—for over 3 years

before repudiating.  The Court should find that 18 months after turning the age of majority is an unreasonable amount of time to wait to repudiate a contract signed as a minor and instruct the district court to enforce Basch's Arbitration Agreement.

14

# ISSUES PRESENTED

1.  Whether a district court, in determining whether putative plaintiffs are "similarly situated" to named plaintiffs under § 216(b) of the FLSA, should "rigorously enforce the similarly situated requirement" through a period of preliminary discovery as held by the Fifth Circuit in *Swales v. KLLM Transport Services*, L.L.C., 985 F.3d 430, 443 (5th Cir. 2021), or must follow the two-step certification process detailed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D. N.J. 1987).

2.  Whether *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco* Cnty., 582 U.S. 255, 265 (2017), prevents a district court from sending notice under § 216(b) of the FLSA to individuals over whom the Court lacks specific personal jurisdiction.

3.  Whether a district court may allow sending of notice under § 216(b) of the FLSA to individuals whom the Court has found to be bound by an enforceable arbitration agreement.

4.  Whether a party who signs an arbitration agreement as a minor may wait more than a year and one-half after reaching the age of

15

majority to repudiate the arbitration agreement and avoid arbitration of their covered claims.

# STANDARD OF REVIEW

This Court reviews a district court's conclusions of law and any mixed questions of law and fact *de novo*. *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020) (*citing OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 [9th Cir. 2011]). This court also reviews a district court's decision to deny a motion to compel arbitration de novo. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085 (9th Cir. 2020) (*quoting Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 [9th Cir. 2004]).

11335098v2

# RELATED CASES

This case has two appeals stemming from one Order of the district court.  One appeal is under 9 U.S.C. § 16(a)(1)(C), the other under 28 § U.S.C. § 1292(a)(1).  Because the appeals involve the same parties and the same operative Order, this Court consolidated the two appeals on April 23, 2024.

11335098v2

# STATEMENT OF FACTS
# AND PROCEDURAL HISTORY

Plaintiffs filed this Fair Labor Standards Act ("FLSA") collective action on May 28, 2021, against their former employer, Cracker Barrel. (D. Ariz. ECF 1.)[2]  From the outset, and through extensive motion practice, the parties litigated whether plaintiffs' claims could go forward even though they signed arbitration agreements as part of Cracker Barrel's Alternative Dispute Resolution Program, and despite the existence of defects in the district court's personal jurisdiction over the claims.  (D. Ariz. ECF 8, 21, 32, 47, 48, 55, 57, 62, 73.)

## I.
## THE DISTRICT COURT DISMISSED THE ORIGINAL COMPLAINT BECAUSE ALL NAMED PLAINTIFFS AGREED TO ARBITRATION.

In response to the original complaint and first motion for conditional certification, Cracker Barrel brought a Motion to Compel Named Plaintiffs to Individual Arbitration and Dismiss.  (D. Ariz. ECF

---

[2] All assertions regarding matters in the record are supported by citation to the ER.  Pursuant to Rule 28-2.8, assertions regarding undisputed facts offered only for general background are not included in the ER.  For the Court's convenience, these assertions are cited using the district court ECF number.

11335098v2

21.)  It argued that all four named plaintiffs signed enforceable

arbitration agreements and must be compelled to arbitrate their claims.

On November 12, 2021, the district court entered an order granting

Cracker Barrel's motion and dismissing the complaint.  (ER 45-54.)  It

held that the named plaintiffs—and any opt-in plaintiff whose claims

were subject to the arbitration agreement— were bound to resolve their

claims through arbitration.  (ER 53-54.)  The district court granted

leave to amend to add new plaintiffs who were not bound to individual

arbitration.  *Id.*

The district court denied reconsideration of its order, stating

"Plaintiffs will have the opportunity to file another motion for

conditional certification *if and when they propose a class that is not*

*subject to the [Arbitration] Agreement*."  (ER 43-44) (emphasis added).

On February 23, 2022, plaintiffs filed a First Amended Complaint

adding three substitute named plaintiffs—Andrew Harrington, Katie

Liammaytry and Jason Lenchert. (D. Ariz. ECF 57.)  None of the three

resided in Arizona, worked for Cracker Barrel in Arizona, or asserted

claims based on any activities in Arizona.  (Cracker Barrel does not

20

reside in Arizona for purposes of general personal jurisdiction). (*See* D. Ariz. ECF 62, p.3.)

Cracker Barrel moved to dismiss for lack of personal jurisdiction. (D. Ariz. ECF 62.) The district court again dismissed the complaint (this time on jurisdictional grounds), but again granted leave to amend. (ER 34-39.)

### III.
### THE DISTRICT COURT GRANTS CONDITIONAL CERTIFICATION—INCLUDING EMPLOYEES BOUND BY ARBITRATION AGREEMENTS AND EMPLOYEES WHO HAVE NO CONNECTION TO ARIZONA.

On August 10, 2022, plaintiffs filed a Second Amended Complaint, naming the three out-of-state plaintiffs previously dismissed and a fourth one who worked in Arizona. (D. Ariz. ECF 74.) Shortly after, they filed a Motion for Conditional Certification. (D. Ariz. ECF 76.)

Cracker Barrel filed a Motion to Compel Individual Arbitration and Dismiss Second Amended Complaint on August 24, 2022. (D. Ariz. ECF 77.) This time, the district court denied the motion, reasoning (1) because the Arizona plaintiff signed his arbitration agreement when he was a minor, he repudiated the agreement by filing suit, and (2) his presence cured any defects in personal jurisdiction over all named

21

plaintiffs (including the three the district court previously dismissed). (ER 13-15.)

The district court also granted conditional certification in part, making four rulings relevant to this appeal:

First, the court declined to follow the FLSA's similarly situated standard from *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), and instead utilized a two-step conditional certification approach rooted in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987). (ER 16-17.)

Second, the court conditionally certified a collective that included over 100,000[3] individuals who had no ties to the forum state of Arizona. (ER 27-28) Fewer than 3,000 individuals in the collective certified by the district court have connections to Arizona. (ER 5.)

Third, the district court granted conditional certification of a nationwide FLSA collective that included over 60,000 individuals who

---

[3] The Order (ER 6-33) was entered March 31, 2023. All representations made about the makeup and size of the putative collective are based on data as of April 10, 2023. (ER 3-5.) Should the Court affirm the district court's Order, the passage of time will lead to the proportional increase in these numbers, including a putative collective likely over 150,000 individuals.

as adults signed arbitration agreements which the court already determined were enforceable. (ER 43-44) (ordering that any collective proposed by Plaintiffs should be a collective that is "not subject to the [Arbitration] Agreement.").

Fourth, the district court allowed named plaintiff Basch to repudiate his otherwise enforceable Arbitration Agreement, 3 years after he signed it and over 18 months after reaching the age of majority.

23

# STATUTORY BACKGROUND AND KEY DECISIONS

## I.
## THE FAIR LABOR STANDARDS ACT'S SILENCE ON THE PROPER MECHANISM FOR DETERMINING "SIMILARLY SITUATED" EMPLOYEES.

In 1938 the FLSA created the rights of workers to a minimum hourly wage and overtime compensation for work beyond forty hours per week. 29 U.S.C. § 206(a)(1), 207(a)(3). To help with the law's enforcement and in the interests of judicial economy, § 216(b) of the FLSA gave employees the right to proceed collectively, seeking recovery not only for their own claims, but also for those of "other employees similarly situated." 29 U.S.C. § 216(b).  Neither the text of the statute nor the legislative history defines the meaning of the phrase "similarly situated," although the phrase was commonly used in pleading class action claims even before the adoption of the Federal Rules of Civil Procedure. *See, e.g.*, *Carpenter v. Knollwood Cemetery*, 198 F. 297, 298 (D. Mass. 1912).

Later, the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.*, created an opt-in requirement where employees must file a written "consent" with the court to become a "party plaintiff" in a case. *Hoffman-La Roche, Inc.*

*v. Sperling*, 493 U.S. 165, 170 (1989); 29 U.S.C. § 216(b). Because of this opt-in procedure, courts concluded that § 216(b) actions involve a separate procedural device from Rule 23 class actions. In *Hoffman-La Roche, Inc. v. Sperling*, the United States Supreme Court settled a circuit split and found that FLSA plaintiffs could affirmatively ask for court-authorized notice to be sent to similarly situated parties. The Supreme Court provided no guidance, however, as to whom the notice should be sent or a procedural framework to decide if the notice should be sent.

## II.
## THE SUPREME COURT'S 2017 *BRISTOL-MYERS* DECISION.

Congress expressly did not provide for nationwide service in the FLSA and reading such a provision into the statute would violate Congress's intent. *See e.g. Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 399 (6th Cir. 2021) ("While the FLSA shows no reticence in setting nationwide labor standards, it does not establish nationwide service of process."); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106, (1987) ("It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it. That

25

Congress failed to do so here argues forcefully that such authorization was not its intention.")  The Supreme Court held in 2017 that the Due Process Clause of the Fourteenth Amendment does not permit courts to exercise specific personal jurisdiction over claims brought by out-of-state plaintiffs, even when those out-of-state plaintiffs join a case also pursued by in-state plaintiffs. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262, (2017) ("*Bristol Myers*").  This is because courts must make sure they have personal jurisdiction over a defendant regarding each plaintiff's individual claims.  *Id.* at 265.  Out-of-state plaintiffs who cannot show their claims have "minimum contacts" with the forum state must be dismissed, even if in-state plaintiffs' claims may continue.  *Id.*

26

# ARGUMENT

There are currently four issues before the Court:

1. The Court should adopt the reasoning of *Swales* and instruct district courts to eschew the two-step "conditional certification" approach rooted in *Lusardi* in favor of rigorously enforcing the "similarly situated" requirement of § 216(b). The two-step approach has no bases in the statute or Supreme Court precedent. On the other hand, the single-step analysis articulated in *Swales* more closely aligns with the plain text of the statute, addresses the Supreme Court's concerns of undue settlement pressure in mass actions prior to consideration of the merits of claims, and comports with the Supreme Court's "fair reading" directive in *Encino Motorcars, LLC v. Navarro*.

2 The Court should join the three out of four Circuits which have applied the Supreme Court's *Bristol Myers* holding to FLSA collective actions. The Supreme Court confirmed that courts must make sure they have personal jurisdiction over a defendant regarding each plaintiff's individual claims. Thus, out-of-state plaintiffs who cannot show their claims have "minimum contacts" with the forum state must be dismissed, even if in-state plaintiffs' claims may continue. The

27

application of this principle to the collective action mechanism necessitates that only those individuals whose claims have ties to Arizona can participate in the litigation and therefore are the only individuals who should receive § 216(b) notice.

3. Section 216(b) notice is only appropriate for those individuals who are "potential collective action members." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1099 (9th Cir. 2018). It is axiomatic then, that individuals who *cannot* participate in the collective should not receive notice inviting them to join. However, that's exactly what the district court held, authorizing § 216(b) notice to over 60,000 individuals who, per the district court's previous order, are bound to arbitrate their claims and cannot participate in the collective. The Court must instruct the district court not to run afoul of *Hoffman-La Roche, Inc.* and instead only issue notice, if any, to individuals who are eligible to participate.

4. The Court should instruct the district court that waiting over 18 months after turning the age of majority to repudiate an Arbitration Agreement signed as a minor is unreasonable. Plaintiff Basch took the benefit of the signed Arbitration Agreement—continued employment with Cracker Barrel—for over 3 years, and only now attempts to renege

28

on the obligations attached to that benefit. Courts examining this issue in the context of FLSA claims are in accord. *See e.g. Norred v. Cotton Patch Cafe, LLC*, 3:19-CV-1010-G, 2019 WL 5425479, at *7 (N.D. Tex. Oct. 22, 2019) (Precluding plaintiff from repudiating an arbitration agreement signed as a minor in an FLSA action where plaintiff did not attempt repudiation until almost one year after turning 18 years old, a delay the court found was not "reasonable"). It is undisputed that Basch signed the Arbitration Agreement and received the benefit of that bargain for over 3 years. The Court should instruct the district court to enforce the Arbitration Agreement signed by Basch.

## I.

### THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA BY APPLYING *LUSARDI'S* "MODEST" TWO-STEP MECHANISM INSTEAD OF "RIGOROUSLY ENFORC[ING] THE SIMILARLY SITUATED REQUIREMENT" OF THE STATUTE AS HELD BY THE FIFTH CIRCUIT IN *SWALES.*

The district court's Order authorized notice under § 216(b) to over 100,000 individuals across the country based on an outdated, two-step standard created by a New Jersey district court. Recently, the Fifth and Sixth Circuits—the only two Circuits to directly address the propriety of *Lusardi's* two-step certification scheme—have rejected it.

29

Instead, both articulated standards which more closely align with the plain text of the FLSA. The Court should join them, rejecting *Lusardi's* two-step conditional certification approach and adopting the sound reasoning of the Fifth Circuit in *Swales v. KLLM*.

## A.
### NEITHER THE FLSA NOR SUPREME COURT PRECEDENT MANDATE A PARTICULAR STANDARD TO DETERMINE IF PARTIES ARE "SIMILARLY SITUATED" UNDER THE FLSA.

As discussed *supra*, the Supreme Court and plain text of the FLSA provide no guidance as to whom § 216(b) notice should be sent or a procedural framework to decide if it should be sent. This Court notes:

the FLSA leaves the collective action procedures—beyond the requirement of a written opt-in—open. [T]he FLSA does not establish a process for evaluating the propriety of the collective mechanism as litigation proceeds. It does not provide a definition of "similarly situated"—the requirement that largely determines the viability of a collective action. And it says nothing about the standard the district court should apply when the collective mechanism is challenged.

*Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108 (9th Cir. 2018).

30

As a result, "in the absence of statutory or case law guidance," district courts "have arrived at a loose consensus as to the proper procedure for determining whether the collective mechanism is appropriate." *Id.* at 1108-09. This "loose consensus," found nowhere in the plain language of the FLSA or its implementing regulations, is a two-step conditional certification approach, originating from *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 378-379 (D.N.J. 1987), where the court conditionally certifies a class for notice purposes and the defendant eventually moves for decertification. *See Campbell* at 1108-1110. This Court has correctly opined, however, that while the *Lusardi* approach "is properly aimed at gauging whether party plaintiffs are legally or factually 'similarly situated,' it does so at such a high level of abstraction that it risks losing sight of the statute underlying it." *Id.* at 1114.

*Lusardi* "offers no clue as to what *kinds* of 'similarity' matter under the FLSA." *Id.* The *Lusardi*-based two-step approach is "a balancing test with no fulcrum." *Id.* It is likely for these reasons that this Court has declined to formally adopt the *Lusardi*-based approach or any other two-step method of determining if the collective mechanism is

31

appropriate. *Id.* at n. 21 ("Nor do we intend to preclude the district courts from employing any other, differently titled or structured test that otherwise gives full effect to our understanding of § 216(b)."). This Court is not bound by precedent or the plain meaning of the statute to follow the *Lusardi*-based two-step approach and should instead instruct district courts in this circuit to "rigorously enforce at the outset of the litigation" § 216(b)'s "'similarly situated' mandate." *Swales*, 985 F.3d at 443.

## B.
### THE TWO-STEP COLLECTIVE CERTIFICATION APPROACH IS OUTDATED AND FAILS TO ACCOUNT FOR SUPREME COURT CONCERNS OVER UNDUE SETTLEMENT PRESSURE.

The two-step approach used by the district court is rooted in *Lusardi*, a non-binding out-of-circuit district court case. Much has changed since *Lusardi* was decided, including the applicable Rule 12(b)(6) standard.

*Lusardi* arose when *Conley v. Gibson*, 355 U.S. 41 (1957), was the applicable pleading standard. *Conley* set the modest "fair notice" standard that was the applicable Rule 12(b)(6) standard for 50 years until the Supreme Court's *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

32

(2007) decision and its later decision in *Ashcroft v. Iqbal*, 556 U.S. 662

(2009). The *Lusardi* court did not have the benefit of the *Twombly/Iqbal*

decisions. The *Conley* standard only required that a plaintiff

"adequately set forth a claim and g[ive] the respondents fair notice of its

basis." *Conley*, 355 U.S. at 48. With fair notice as the floor of what a

plaintiff must show, the *Lusardi* court created the "modest" conditional

certification standard as a gatekeeping mechanism for § 216(b) notice.

In the six decades since *Conley* much has changed in the legal

landscape, including the explosion of FLSA collective action litigation.

Over the last ten years, an average of 7,406 FLSA cases were filed by

plaintiffs in federal courts.[4] In 2023, 2,909 collective actions were

terminated from the docket with only 41 cases resolving on the merits

via trial. *Id.* While data is not publicly available for the remaining

cases, in 2023, 423 FLSA collective actions settled in federal court with

reported settlement values, totaling $493,571,392. *Conley* and

*Lusardi's* "modest" conditional certification standard divorces the

---

[4] "2023 FLSA Litigation Metrics & Trends, " Seyfarth Shaw LLP,
March 4, 2024 (available on the Internet at
https://www.lexology.com/library/ detail.aspx?g=660078fd-fd2d-42ec-
95c59012604c6413#:~:text=In%202023%2C%20423%20FLSA%20collect
ive,reached%20in%202023%20was%20%2465%2C500%2C000.

outcome of FLSA collective actions cases from their merits because it creates disproportionate and undue settlement pressures before a court is required to consider the merits of a case.

"Cases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC,* 840 F.3d 606, 616 (9th Cir. 2016). *Conley* and *Lusardi's* "modest" conditional certification standard, however, rarely leads to this result. Instead, it has led to this playbook for the plaintiffs: (1) bring a collective action, (2) satisfy step one of *Lusardi's* "modest" conditional certification standard via allegations alone, (3) send § 216(b) notice to build a large collective, (4) create undue pressure for companies to settle before a court can address the merits with the threat of expensive and time-consuming litigation. This playbook rarely results in courts even considering, much less opining on, the merits of a claim. These concerns over undue pressure to settle potentially meritless claims in mass actions were central to the Supreme Court's decision to overrule *Conley* in *Twombly*. *See Twombly*, 550 U.S. at 558 (criticizing the coercive inflation of settlement values in overturning *Conley*). In overturing *Conley*, the Supreme Court lamented a plaintiff's ability to take "a largely

groundless claim," band together a class action around that claim, and then leverage that large class to greatly increase litigation costs and "*in terrorem*" settlement pressures. *Id.*

Because it is rooted in *Conley* and not the pleading standard of *Twombly*, the *Lusardi*-based two-step certification mechanism creates the same misguided "*in terrorem* increment of the settlement value" of FLSA collective action claims, regardless of their merit. *Id.* (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975)). This is because the two-step approach of *Lusardi* has been interpreted by district courts in this Circuit to only require a "modest" factual showing to justify conditional collective certification.[5] A "modest" standard requires a district court "only to conclude whether there *may* be other similarly situated workers." *Shi Yong Li v. 6688 Corp.*, No. 12 Civ. 6401, 2013 WL 5420319, at *2 (S.D.N.Y. Sept. 27, 2013) (emphasis

---

[5] *See e.g. Estrada v. Avalon Health Care Hearthstone, LLC*, No. 1:21-CV-688-CL, 2023 WL 8809734, at *10 (D. Or. Nov. 29, 2023) (only a "modest factual showing" needed for conditional certification); *Dominguez v. Better Mortg. Corp.*, No. 8:20-CV-01784-JLS-KES, 2022 WL 17216831, at *3 (C.D. Cal. Oct. 24, 2022) (same).

35

original). Yet what may conceivably be true and what is plausibly true are different matters. As the Supreme Court held, a party must allege enough facts to "nudge[] their claims *across the line from conceivable to plausible.*" *Twombly*, 550 U.S. at 570 (emphasis added). Such is the problem with the "modest" showing two-step conditional certification standard. A *Lusardi* plaintiff need only make it "conceivable" that similarly situated employees exist, not "plausible," thus making the *Lusardi* standard far more lenient than even the Rule 12(b)(6) standard.

The *Lusardi* approach to collective actions permits plaintiffs to ignore *Twombly/Iqbal*. A plaintiff typically presents conclusory, boilerplate declarations as "evidence" of a similarly situated collective that would not survive scrutiny as pleading under the *Twombly/Iqbal* standard but somehow suffices under the "modest" factual showing approach. *Lusardi* and the "modest" factual showing standard have become a conduit for the *Conley* standard to live on after it was overruled. The Court should put an end to this and reject *Lusardi*.

36

## C.

### *TWOMBLY/IQBAL* MARKED A SHIFT IN HOW COURTS MUST SCRUTINIZE ALLEGATIONS AND FILINGS IN THE INITIAL STAGES OF MASS ACTIONS.

In mass actions the Supreme Court makes clear that courts should be wary of and attempt to prevent threats of costly litigation which lead to "*in terrorem*" settlement pressures very early in cases—before the merits are addressed. *See Twombly*, 550 U.S. at 558. These concerns in the class action context of *Twombly* were central to the Supreme Court's decision to overrule *Conley*. *Id.* These concerns are also present in the mass action context of the FLSA's collective action mechanism.

In *Twombly*, when faced with a mass action, the Supreme Court rejected the idea that meritless claims can be "weeded out early in the discovery process through careful case management." *Id.* at 559 (citation omitted). This is because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [the merits at summary judgment]." *Id.* The Supreme Court acknowledged the problem of the incredible settlement pressure which comes, not from the merits of a claim, but from the sheer volume of potential litigants and the threat of expensive litigation, and sought to

37

correct it by raising the pleading standard for a complaint. Here, this Court can further address this problem by raising the pleading standard for the "similarly situated" mechanism of the FLSA.

The Court should address in the FLSA collective action context the same concerns of "*in terrorem*" settlement pressures the Supreme Court addressed in the class context in *Twombly*. The Court should replace *Lusardi's* "modest" two-step conditional certification with a one-step mechanism that "rigorously enforce[s] at the outset of the litigation" § 216(b)'s "'similarly situated' mandate." *Swales*, 985 F.3d at 443.

## D.
### THE *LUSARDI* APPROACH ALSO CONFLICTS WITH THE SUPREME COURT MANDATE IN *ENCINO MOTORCARS, LLC v. NAVARRO* TO INTERPRET THE FLSA WITH A "FAIR READING."

When courts in this circuit are confronted with how to determine if individuals are "similarly situated," they have viewed this choice through the lens of "the remedial purpose of the FLSA." *Wynn v. National Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002); *see also Bayles v. American Med. Response of Colo., Inc.*, 950 F. Supp. 1053, 1067 (D. Colo. 1996) (choosing to "apply the *Lusardi*

approach" in part because of the "remedial purposes of the FLSA."). This "remedial approach" lens, however, was rejected by the Supreme Court in *Encino Motorcars, LLC v. Navarro*, where the Court determined that courts "have no license to give [the FLSA] anything but a fair reading." 584 U.S. 79 at 89 (2018).

In *Encino*, the Court held that it is a "flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'" *Id.* (citations omitted). This lead the Court to reject the longstanding practice of narrowly construing FLSA exemptions and applies with equal force to the question of how to determine which individuals are "similarly situated." A "fair reading" of the FLSA cannot lead a court to conclude that the question of "similarly situated" should be answered with a two-step approach where the court first determines on a "conditional" basis if individuals are similarly situated to then revisit the question at a later "decertification" stage. Instead, a "fair reading" of the statute (which simply states that an individual may proceed on "behalf of himself or themselves and other employees similarly situated,") leads to the conclusion that a court should determine, in one step, not two, if other employees are "similarly situated." 29 U.S.C. § 216(b). Because

39

courts can no longer pick and choose how stringently to enforce each aspect of the FLSA, the Court should "rigorously enforce" the "similarly situated" language, just as it must "rigorously enforce" all other aspects of the FLSA.

### E.
### BECAUSE COURTS IN THIS CIRCUIT MUST EVALUATE THE FAIRNESS OF PROPOSED FLSA SETTLEMENTS BEFORE APPROVAL, THEY MUST RIGOROUSLY ENFORCE THE "SIMILARLY SITUATED" LANGUAGE OF THE FLSA.

Courts in this Circuit have a "duty to scrutinize any settlement of an FLSA claim." *See e.g. Deane v. Fastenal Co.*, Case No.: 11-CV-0042-YGR, at *4 (N.D. Cal. Nov. 14, 2013). "Ultimately, courts evaluate whether a settlement agreement of FLSA claims is fair and reasonable under the totality of the circumstances," including evaluating "the strength of plaintiffs case." *Panico v. Turnbull Law Grp.*, No. 21-CV-02060-PHX-MTM, at *1 (D. Ariz. Jan. 24, 2022). It is illogical then, that a court should evaluate the strength and merits of a plaintiff's claim when evaluating a settlement, but not do so when determining if plaintiff is "similarly situated" with other employees—the very decision that precipitates most settlements.

40

Under the two-step *Lusardi* approach, a court merely "conditionally" decides that other individuals are "similarly situated" with plaintiff. However, that "conditional" finding creates "*in terrorem*" settlement pressure and leads the vast majority of collective actions to settle before the court allows for discovery and ever considers the merits of plaintiff's claim. This makes it impossible for a court to truly "scrutinize" the "strength of plaintiffs case" when evaluating an FLSA collective settlement. By allowing the parties to engage in discovery and ensuring courts "rigorously enforce" the "similarly situated" statutory language, courts will later have the necessary facts to properly evaluate the merits of plaintiff's claim when scrutinizing FLSA collective action settlements.

## F.
### THE COURT SHOULD ADOPT THE *SWALES* APPROACH TO ALIGN THE LAW WITH THE PLAIN MEANING OF THE STATUTE AND SUPREME COURT PRECEDENT.

In *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit rejected the *Lusardi* framework in favor of a consistent, rigorously enforced similarly-situated standard. It noted that the *Lusardi*-based approach improperly handcuffs a district court,

41

preventing any meaningful analysis on the "similarly situated" element at the outset. *Id.* ("*Lusardi* frustrates, rather than facilitates, the notice process").

Instead, "*Lusardi* distracts from the FLSA's text" and creates "conditional certification" and its attendant "modest" standard that exists nowhere in the FLSA, or Supreme Court precedent. *Id.* at 440. Courts use *Lusardi* and its two-step conditional certification mechanism because there is no other accepted alternative. "But practice is not necessarily precedent." *Id.* As a consequence, the district court in *Swales*, as the district court here, could not analyze the facts because it was hamstrung by the "modest" standard of a *Lusardi*-based two-step approach. District courts are left with a test that is so "flexib[le]" as to be "unpredictab[le]" but so "ridged[ ]" as to prevent district courts from engaging in any meaningful analysis. *Id.* at 441. The Court should reject the two-step approach to certification for a mechanism that more closely aligns with the plain meaning of the FLSA. Instead, the proper framework for evaluating whether notice to putative opt-in plaintiffs should be authorized is a single-step analysis: whether the named

42

plaintiff(s) and the putative opt-in plaintiffs are "similarly situated." *Swales*, 985 F.3d at 441.

Under *Swales*, in determining whether the similarly situated standard is met, the district court must "rigorously scrutinize" the facts and legal issues to determine whether the merits can be decided collectively. *Id.* at 442. The district court's determination comes after some discovery has taken place, in contrast with the first step of the *Lusardi*-based two-step approach, which asks the district court to rule on conditional certification without the benefit of any. *Id.* at 441-442. Cracker Barrel argues that the rigorous "similarly situated" standard in *Swales* is the proper standard to evaluate Appellees' Motion for Conditional Certification for three reasons:

First, as discussed *supra*, the Court is not bound by precedent to follow the *Lusardi*-based two-step approach. Although many district courts both in and outside the Ninth Circuit have applied the two-step framework, the Ninth Circuit has never addressed whether it is required by the FLSA or even whether it follows the statutory text. As the court noted in *Campbell*, district courts within the Ninth Circuit have followed a two-step approach "[i]n the *absence* of statutory or case

43

law guidance" regarding the proper way to evaluate whether conditional certification and the resulting court-authorized notice is appropriate. 903 F.3d at 1108-1109 (emphasis added). The Fifth Circuit's decision in *Swales* and the Sixth Circuit's decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023)—also rejecting the *Lusardi* two-step approach—now provide this Court and district courts with persuasive authority that squarely addresses the issue.

Second, and as discussed in *Swales*, using a single-step "similarly situated" analysis far more follows the text of the FLSA than *Lusardi's* two-step approach. Section 216(b) provides only that plaintiffs may litigate jointly against an employer if they are "similarly situated." The word "certification," much less "conditional certification," appears nowhere in the FLSA. *Swales*, 985 F.3d at 434. The Court has expressed agreement on this point, stating in *Campbell* that the idea of "conditional certification" is drawn from an improper analogy to Rule 23 class actions. 903 F.3d at 1101. The two-step approach leads to minimal, if any, scrutiny of whether potential opt-in plaintiffs are "similarly situated," and instead asks the question "are individuals similarly situated *enough*, even if it turns out after discovery and

44

analysis of the facts that they actually aren't similarly situated?" The plain text of the FLSA does not endorse sending notice under § 216(b) to individuals who are "similarly situated *enough*, for now, but might not be later." Instead, the Court should adopt a standard that aligns with the FLSA's plain text and lets district courts determine, after a period of discovery and factual analysis, if potential opt-in plaintiffs are "similarly situated."

Third, the "similarly situated" framework endorsed in *Swales* – rigorously analyzing whether the claims can be decided collectively, and allowing discovery related to that issue – follows Supreme Court precedent regarding FLSA collective actions. In *Hoffman-La Roche Inc.*, the Court held that § 216(b) grants district courts the discretion to help with notice to similarly situated individuals of a collective action. However, the Court emphasized that the discretion to help with notice was not "unbridled" — the notice process cannot serve as judicially-approved process for solicitation of claims. 493 U.S. at 174. Thus, a district court must rigorously analyze whether individuals may be "similarly situated," including having the benefit of discovery, before

45

allowing court-approved notice to individuals who have not joined the lawsuit. *Swales*, 985 F.3d at 435-436.[6]

The Court should instruct the district court to evaluate Appellees' Motion for Conditional Certification by rigorously scrutinizing the factual and legal issues pertaining to Appellees' claims and determining, after the benefit of discovery, whether the merits of Appellees' claims can be resolved on a collective basis. Only after applying that standard and concluding that notice is proper should the Court authorize notice to other individuals of the right to opt-in to this litigation.

## II.
### THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA TO INDIVIDUALS WHOSE CLAIMS DO NOT ARISE FROM CRACKER BARREL'S ARIZONA CONDUCT AND OVER WHOM THE DISTRICT COURT LACKS SPECIFIC PERSONAL JURISDICTION.

Every person who asks a federal court to adjudicate a claim must show that personal jurisdiction exists as to her claims. Claimants must

---

[6] The Ninth Circuit's opinion in *Campbell* underscores the significance of the Court's decision regarding whether to facilitate notice. 903 F.3d at 1101 (noting that the "sole consequence" of what courts have termed conditional or preliminary certification is "the sending of court-approved written notice to workers who may wish to join the litigation as individuals.") (internal quotations omitted).

46

independently show that their individual claim is based on the defendant's conduct in the forum state unless a federal statute allows nationwide service of process—which the FLSA does not. In *Bristol-Myers* the Supreme Court clarified that, even when some individuals to a mass action may properly assert personal jurisdiction, all party plaintiffs keep the independent duty to establish the exercise of personal jurisdiction regarding their own claims. 582 U.S. at 265.

Here, in granting § 216(b) notice, the district court erred by ignoring the question of personal jurisdiction as to those individuals who would receive notice who did not work for Cracker Barrel in Arizona. *Bristol-Myers*'s "straightforward application . . . of settled principles of personal jurisdiction" prevents conditional certification of any FLSA collective in this case that extends beyond Arizona's borders. *Id.* at 268. Because the out-of-state potential opt-in plaintiffs cannot show that the district court can exercise personal jurisdiction over their claims, the district court erred in allowing this notice under § 216(b).

47

## A.
## PERSONAL JURISDICTION MUST BE ESTABLISHED IN ALL CASES AS TO ALL CLAIMS.

"The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The purpose of personal jurisdiction is to protect defendants' rights, and their liberty interests. *See Bristol-Myers* at 263. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). To protect this liberty interest, courts may only exercise personal jurisdiction if the defendant has "certain minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"Personal jurisdiction … is an essential element of a district court's jurisdiction, without which the court is powerless to proceed to an adjudication." *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Courts recognize two types of personal jurisdiction: general

11335098v2

and specific. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Here, the district court already determined that it "lacks general personal jurisdiction over Cracker Barrel." (ER 38.) Thus, each prospective opt-in must establish for himself or herself specific personal jurisdiction in the district of Arizona. This Court has established a three-part test for showing specific personal jurisdiction:

> "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." (*Herbal Brands, Inc. v. PhotoPlaza, Inc.*, 72 F.4th 1085, 1090 [9th Cir. 2023].)

Prospective plaintiffs who did not work for Cracker Barrel in Arizona, however, cannot satisfy prong two of this test.[7] The district

---

[7] Cracker Barrel contends that out-of-state potential opt-in plaintiffs could not satisfy any of the three prongs of the specific personal jurisdiction test. However, failure to satisfy even one of the prongs is fatal to establishing specific personal jurisdiction.

court has determined that when "the Plaintiffs' claims do not arise out of Cracker Barrel's operation of restaurants in Arizona," plaintiffs "fail the second prong of the specific personal jurisdiction test," and "[c]onsequently, the Court lacks specific personal jurisdiction over Cracker Barrel" as it relates to potential plaintiffs who did not perform work in Arizona.  (ER 38.)  The district court "has already found that it would be unfair to subject Cracker Barrel to the Court's jurisdiction," regarding potential opt-in plaintiffs who did not perform work for Cracker Barrel in Arizona.  (*Id.* at 38-39.)

The Supreme Court's decision in *Bristol Myers* further emphasized the importance of specific personal jurisdiction, holding that:

> "For a court to exercise specific jurisdiction over a claim, **there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State."** *Goodyear,* 564 U.S., at 919, 131 S.Ct. 2846 (internal quotation marks and brackets in original omitted). When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State....
> The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition, as in *Walden,* **all the conduct giving rise to the nonresidents' claims occurred**

50

**elsewhere**. It follows that the California courts cannot claim specific jurisdiction." (*Id.* at 264–266 [citations omitted] [emphasis added].)

As to potential opt-in plaintiffs who Cracker Barrel did not employ in Arizona, the claims of these individuals (and alleged failure to pay minimum and overtime wages) have no connection to the forum state of Arizona and Cracker Barrel's alleged conduct that gave rise to these claims also did not occur in Arizona.  Individuals who did not work for Cracker Barrel in Arizona cannot show specific personal jurisdiction in Arizona and are ineligible to participate.  Because they cannot participate, these individuals should not receive notice under § 216(b).

## B.
### THE UNDERLYING FEDERAL STATUTE DOES NOT PROVIDE FOR NATIONWIDE SERVICE OF PROCESS.

Specific personal jurisdiction depends on a defendant's contacts with the forum state unless the underlying federal statute provides for nationwide service of process. The requirement that a claim arise from forum contacts flows from the Fifth Amendment Due Process Clause in federal question cases like this one.  A court may only bind parties with sufficient contacts to its forum.

Before a federal court may exercise personal jurisdiction over a defendant there must be permission for service of summons on the defendant. "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017). In "most cases," including under the FLSA, Congress has not authorized nationwide service. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Where Congress has not authorized service for a particular federal cause of action (as in the case of the FLSA) a federal court's authority over a defendant is limited to the same constitutional limitations the Fourteenth Amendment imposes on state courts. *See Walden*, 571 U.S. at 283. Because the FLSA does not provide for nationwide service of process, the territorial limits of effective service—and the limits on a court's jurisdictional reach—are set by Fed. R. Civ. P. 4(k)(1)(A). As discussed *supra*, potential opt-ins whose claims have no ties to Arizona and are not based on any actions taken by Cracker Barrel in Arizona cannot show specific personal jurisdiction with the district court and should not receive § 216(b) notice.

52

## C.

### THE COURT SHOULD NOT AUTHORIZE § 216(B) NOTICE TO POTENTIAL OPT-INS WHOSE CLAIMS DO NOT STEM FROM ARIZONA ACTIVITIES.

The claims of any potential opt-in who did not work for Cracker Barrel in Arizona would suffer from a fatal personal jurisdiction defect, resulting in dismissal of the potential opt-ins claims. The purpose of sending an FLSA notice is to "permit *potential [collective] members* to opt-into the lawsuit." *Weeks v. Matrix Absence Mgmt. Inc.*, 494 F. Supp. 3d 653, 657 (D. Ariz. 2020) (emphasis added). It follows that notice should not be sent to individuals—such as individuals who did not work for Cracker Barrel in Arizona—who are not "potential [collective] members."

The Supreme Court's *Bristol-Myers* decision supports this result, as do three of the four circuit courts that have applied *Bristol-Myers* to FLSA collective actions in federal court:

- *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370–71 (3d Cir. 2022) ("We join the Sixth and Eighth Circuits and hold that, where the basis of personal jurisdiction in an FLSA collective action in a federal court is specific personal jurisdiction established by serving process according to Federal Rule of Civil Procedure

53

4(k)(1)(A), **every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state**.")(emphasis added);

- *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865–66 (8th Cir. 2021) ("In order for a court to exercise specific jurisdiction *over a claim*," there must be an "affiliation between the forum and the underlying controversy"—**"unconnected activities" do not establish jurisdiction**… The court properly excluded claims with no connection to [the forum state].")(citations omitted)(emphasis added);

- *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 397 (6th Cir. 2021), *cert. denied,* 142 S. Ct. 2777 (2022) ("Anthem did not employ the nonresident plaintiffs in Tennessee. Anthem did not pay the nonresident plaintiffs in Tennessee. Nor did Anthem shortchange them overtime compensation in Tennessee. Taken together, the claims before us look just like the claims in *Bristol-Myers*. **Where, as here, nonresident plaintiffs opt into a putative collective action under the FLSA, a court may not exercise specific**

54

personal jurisdiction over claims unrelated to the defendant's conduct in the forum State.") (emphasis added).

The jurisdictional facts here are parallel to those of *Canaday*. Here, as in *Canaday*, (i) Cracker Barrel did not employ the non-resident plaintiffs in Arizona; (ii) Cracker Barrel did not pay the non-resident plaintiffs in Arizona; and (iii) Cracker Barrel did not (allegedly) fail to pay plaintiffs minimum wage or overtime compensation in Arizona. Given these similarities, the same result—denying conditional certification of claims unrelated to Cracker Barrel's conduct in Arizona—is appropriate. District courts in this circuit and across the country are in accord.[8]

_____

[8] *See e.g. Kurtz v. RegionalCare Hosp. Partners, Inc.*, No. 4:19-CV-5049-RMP, 2021 WL 6246619, at *6 (E.D. Wash. Sept. 9, 2021) ("*Bristol-Myers* applies to FLSA collective actions and preclude[s] [the] court's exercise of personal jurisdiction to reach claims of nonresident opt-in members without any link between the alleged conduct by defendant and [the forum state]."); *McNutt v. Swift Transp. Co. of Ariz., LLC*, No. 18-cv-5668 BHS, 2020 WL 3819239, at *8 (W.D. Wash. July 7, 2020) ("because [defendant] is not subject to general jurisdiction in [the forum state], the exercise of personal jurisdiction in this case would require each opt-in plaintiff to demonstrate that their claim arose from or is sufficiently related to [defendant's] relationship to [the forum state]."); *Carlson v. United Nat. Foods, Inc.*, No. C20-5476-JCC, 2021 WL 3616786, at *3–4 (W.D. Wash. Aug. 14, 2021) (Denying conditional certification of non-forum claims because "[a]s in *Bristol-Myers*, nothing in the current record suggests that [non-forum state] employees' claims

55

Courts across the country have found the application of *Bristol-Myers* to the FLSA is appropriate based on three essential principles. First, because FLSA collective actions are mass actions similar to the one discussed in *Bristol-Myers*, there is no reasoned basis to decline to apply *Bristol-Myers* in the FLSA context. Second, because the FLSA does not provide for nationwide service of process, a non-resident plaintiff's claim under the FLSA has the same personal jurisdiction analysis as the plaintiffs' state law claims in *Bristol-Myers*. Third, these

---

arose out of any links between Defendants and [the forum state].");  *see also Vallone v. CJS Solutions Grp., LLC*, 437 F. Supp. 3d 687, 691 (D. Minn. 2020) (same); *Bone v. XTO Energy, Inc.*, 561 F. Supp. 3d 1132, 1137 (D.N.M. 2021) (same); *Goldowsky v. Exeter Fin. Corp.*, No. 15-cv-632A(F), 2021 WL 695063, at *4 (W.D.N.Y. Feb. 23, 2021); *Hodapp v. Regions Bank*, No. 4:18-cv-1389 HEA, 2020 WL 7480562, at *5 (E.D. Mo. Dec. 18, 2020); *Hutt v. Greenix Pest Control, LLC*, No. 2:20-cv-1108, 2020 WL 6892013, at *7–8 (S.D. Ohio Nov. 24, 2020); *Greinstein v. Fieldcore Servs. Sols.*, LLC, No. 2:18-cv-208-Z, 2020 WL 6821005, at *4–6 (N.D. Tex. Nov. 20, 2020); *Wiggins v. Jedson Eng'g, Inc.*, No. 1:19-cv-00354-DCLC-CHS, 2020 WL 6993858, at *3–5 (E.D. Tenn. Aug. 27, 2020); *Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 549–52 (E.D. Pa. 2020); *White v. Steak N Shake Inc.*, No. 4:20-cv-323 CDP, 2020 WL 1703938, at *4–5 (E.D. Mo. Apr. 8, 2020); *Camp v. Bimbo Bakeries USA, Inc.*, No. 18-cv-378-SM, 2020 WL 1692532, at *5–8 (D.N.H. Apr. 7, 2020); *Murphy v. Labor Source, LLC*, No. 19-cv-1929 (MJD/ECW), 2020 WL 3633234, at *14–15 (D. Minn. Mar. 12, 2020); *Chavira v. OS Restaurant Servs., LLC*, No. 1:18-cv-10029, 2019 WL 4769101, at *6–7 (D. Mass. Sept. 30, 2019); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850–51 (N.D. Ohio 2018).

cases emphasize—as *Bristol-Myers* did—that applying *Bristol-Myers* does not bar the non-resident plaintiffs from pursuing their claims or from doing so nationwide in a forum where jurisdiction properly lies. The Court should apply the reasoning of *Bristol-Myers* to the FLSA and instruct the district court to limit § 216(b) notice, if any, to only those potential plaintiffs who can show specific personal jurisdiction.

### 1. FLSA Opt-In Plaintiffs Are Not Meaningfully Distinguishable From The Mass Tort Plaintiffs In *Bristol-Myers*.

This Court holds that an FLSA collective action is "a kind of mass action," *Campbell*, 903 F.3d at 1105, in which a named plaintiff files a complaint on behalf of himself and other similarly situated employees, 29 U.S.C. § 216(b). Opt-in plaintiffs are not automatically joined to the case and instead must affirmatively opt into the action to "become . . . party plaintiff[s]." 29 U.S.C. § 216(b). Rather than being represented by the named plaintiff, opt-in plaintiffs "assert[] claims in their own right." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Under the FLSA's express statutory framework, each opt-in plaintiff's FLSA action is not began until his/her individual "written consent is filed in the court." 29 U.S.C. § 256(b). And after filing their

57

consents, the opt-ins "act as a collective of individual plaintiffs with individual cases." *Campbell*, 903 F.3d at 1105. As the *McNutt* court observed, "'[t]he FLSA leaves no doubt that 'every plaintiff who opts into a collective action has party status.' . . . [T]his framing requires the conclusion that FLSA opt-in plaintiffs are analogous to the mass tort plaintiffs in *Bristol-Myers*." 2020 WL 3819239, at *8 (quoting *Campbell*, 903 F.3d at 1104). *Bristol-Myers* requires individual-by-individual analyses to assess whether personal jurisdiction may be established over each plaintiff's personal claim. It expressly prohibits bootstrapping jurisdiction to the claims of out-of-state opt-ins only because jurisdiction may exist over the claims of Appellees who worked for Cracker Barrel in Arizona. *See Bristol-Myers*, 137 S. Ct. at 1781.

### 2. *BRISTOL-MYERS'* ANALYSIS OF STATE CLAIMS IN STATE COURT APPLIES EQUALLY TO THE FLSA,

Although *Bristol-Myers* "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court," well-settled due process principles clarify that the same analysis used by the *Bristol-Myers* Court must be applied in the FLSA context. As discussed *supra*, Federal Rule of Civil

58

Procedure 4(k) requires a federal court to follow the personal jurisdiction rules of the state in which it sits unless Congress has provided otherwise. For that reason, "a national service provision is a necessary prerequisite for a court to even consider a national contacts approach." *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989). Yet "[t]he FLSA does not provide for nationwide service of process." *McNutt*, 2020 WL 3819239, at *8. That means the personal jurisdiction analysis is "constrained by" the same state-based minimum-contacts analysis used in *Bristol-Myers. Id.* (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 418–19 (9th Cir. 1977) (holding that, because the Lanham Act did not allow nationwide service of process, a Nevada court did not have personal jurisdiction over claims arising in California). While Congress remains free to allow nationwide service of process under the FLSA, as it has done with other statutes, it has chosen not to do so. That choice requires application of the *Bristol-Myers* analysis here. "Because [defendants are] not subject to general jurisdiction in [the forum state], the exercise of personal jurisdiction in this case would require each opt-in plaintiff to demonstrate that their claim arose from or is sufficiently

59

related to [defendants'] relationship to [the forum state]." *McNutt*, 2020 WL 3819239, at *8. Potential out-of-state opt-ins who worked exclusively outside of Arizona cannot do so, and they should not be invited to join this case through § 216(b) notice.

### 3. FLSA OPT-IN PLAINTIFFS REMAIN FREE TO FILE CLAIMS WHERE PERSONAL JURISDICTION MAY BE PROPERLY ESTABLISHED.

While ultimately secondary to—and without the ability to override—the jurisdictional principles noted above, Congress's intent in passing the FLSA only further supports the application of *Bristol-Myers* to the FLSA. "When Congress knows how to provide a remedy but does not do so, Courts should infer that Congress's decision was intentional." *Weirbach*, 478 F. Supp. 3d at 551 (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485 (1996)). Congress did not include a nationwide service of process provision in the FLSA, despite doing so in past legislation. *Greinstein*, 2020 WL 6821005, at *6. "The lack of a similar provision in the FLSA suggests that Congress intended to limit where nationwide actions can be brought." *Weirbach*, 478 F. Supp. 3d at 551. Just as in *Bristol-Myers*, refusing to let potential out-of-state opt-ins join a case in this forum "does not prevent the [Arizona] and out-of-state plaintiffs

60

from joining together in a consolidated action in the States that have general jurisdiction over [defendant]." *Bristol Myers* at 257.

### 4. *BRISTOL-MYERS* PRECLUDES NATION-WIDE FLSA CERTIFICATION.

In sum, whatever policy interests may underlie the FLSA, they cannot supersede constitutional due process protections. *See, e.g., McNutt*, 2020 WL 3819239, at *8 (noting that any concerns the court may have about the implications of its ruling could not override the conclusion that personal jurisdiction is lacking). Because each out-of-state FLSA opt-in plaintiff has independent party status and because each cannot pursue his or her claims in this forum, the Court must instruct the district court to limit § 216(b) notice, if any, only to individuals who can show specific personal jurisdiction in Arizona.

### III.
### THE DISTRICT COURT ERRED IN AUTHORIZING NOTICE UNDER § 216(B) OF THE FLSA TO INDIVIDUALS WHOM THE DISTRICT COURT ALREADY DETERMINED TO BE BOUND BY AN ENFORCEABLE ARBITRATION AGREEMENT.

This Court holds "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *U.S. v. Marguet-Pillado*, 648 F.3d 1001, 1010

61

(9th Cir. 2011); *see also Century 21 Real Est. LLC v. Century Ins. Grp.*, No. 03-0053-PHX-SMM, 2007 WL 484555, at *3 (D. Ariz. Feb. 8, 2007), *aff'd sub nom. Century 21 Real Est. LLC v. Century Sur. Co.*, 300 F. App'x 527 (9th Cir. 2008) (promoting "the concept that courts should generally follow earlier orders in the same case."). The "law of the case" was established and clarified by the district court in the Order, holding that "Employees who have signed the Agreement, including through Cracker Barrel's online training program, while the majority age are subject to the Agreement" and cannot bring their claims in court. (Order, ER 16-18.) "By contrast, employees are not subject to the Agreement" and therefore eligible to participate, "if they: (1) did not sign the Agreement; (2) signed the Agreement when they were a minor and are still a minor; or (3) signed the Agreement when they were a minor and voided the Agreement after turning the majority age." (*Id.* at ER 18-21.) Despite this ruling, the district court authorized § 216(b) notice to well over 100,000 individuals, about two-thirds of whom, by the district court's own ruling, cannot participate. As discussed *supra*, the purpose of sending an FLSA notice is to

"permit ***potential [collective] members*** to opt-into the lawsuit." *Weeks*,

494 F. Supp. 3d at 657 (emphasis added). By the district court's own determination, individuals who signed the Arbitration Agreement while the majority age are not "potential [collective] members" and should not be sent § 216(b) notice.

### A.
### SECTION 216(B) NOTICE SHOULD NOT BE SENT TO INDIVIDUALS WHO CANNOT PARTICIPATE IN THE LAWSUIT.

Where the district court has determined who an Arbitration Agreement applies to and who it does not apply to, courts in this circuit let defendants present evidence as to which individuals are bound to arbitrate their claims based on the Court's previous rulings. *See e.g. Droesch v. Wells Fargo Bank, N.A.*, No. 20-CV-06751-JSC, 2021 WL 2805604, at *3 (N.D. Cal. July 6, 2021) ("allow[ing] Wells Fargo the opportunity to present evidence in support of its argument that 27,000 of the employees in the collective action signed valid and enforceable arbitration agreements" and should not be mailed notice.) A closer analysis of *Droesch* is instructive. In *Droesch*, as here, the court had "ruled on the enforceability of the arbitration agreement" before granting plaintiff's motion for conditional certification. *Id.* In *Droesch*, plaintiff sought to mail notice to 27,000 individuals bound to arbitrate

63

claims and were ineligible to join the case. Here, Appellees seek to mail to over 60,000 individuals who the Court has determined are bound to arbitrate claims and are ineligible to join this case. In *Droesch*, the court concluded that "given that the Court has now ruled on the enforceability of the arbitration agreement, ***it would make little sense to provide notice to 27,000 individuals whose claims appear barred from being prosecuted here***." 2021 WL 2805604, at *3 (emphasis added) (citing *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) ("In the specific situation where the court has been shown certain individuals may not join the action, it may be inefficient to send notice to those people—because the notice may serve only to prompt futile attempts at joinder or the assertion of claims outside the collective proceeding."). The same logic applies here, as "it would make little sense to provide notice" to over 60,000 individuals whose claims are barred from being prosecuted in this case. *Id.*

Where "there is no dispute that certain individuals cannot participate in the collective action, sending such individuals notice would [not] merely be inefficient. It would be frivolous." *Sandbergen v. Ace Am. Ins. Co.*, No. 18-CV-04567-SK, 2019 WL 13203944, at *4 (N.D.

64

Cal. June 17, 2019) (citation omitted). The Fifth Circuit summed up the issue well in *In re JPMorgan Chase & Co.*, holding that "alerting those who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes." 916 F.3d 494, 502 (5th Cir. 2019). Because the district court has determined that over 60,000 individuals cannot participate in the lawsuit due to signing the Arbitration Agreement, the Court should instruct the district court to not offend *Hoffmann-La Roche* by stirring up litigation. Instead, the district court should only allow § 216(b) notice, if any, to those individuals who can participate.

## B.
### SENDING § 216(B) NOTICE TO THOSE INDIVIDUALS BOUND BY AN ARBITRATION AGREEMENT OFFENDS THE FEDERAL ARBITRATION ACT.

In addition to offending *Hoffmann-La Roche* by stirring up litigation, the district court's Order also runs in stark contrast to and greatly offends the Federal Arbitration Act (FAA). The FAA mandates that arbitration agreements be rigorously enforced according to their terms. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (the FAA directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable."). Given this doctrine, the FLSA and the

65

FAA must be interpreted in harmony with each other. *See, e.g.*, *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 295-96 (6th Cir. 2018) (stating that while the FLSA "gives employees the *option* to bring their claims together . . . it does not say that agreements requiring one-on-one arbitration become a nullity if an employee decides that he wants to sue collectively after signing one.") (original emphasis). The way to harmonize the FAA and the FLSA is simple and straightforward— instead of sending FLSA notice to individuals who the FAA clarifies cannot participate, the Court should direct the district court to exclude from any notice dissemination those individuals who have signed arbitration agreements after turning the age of majority. *See Id.* at 296 (concluding that "employees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not.") (citing *Epic Sys. Corp.*, 138 S. Ct. at 1624). Only those individuals can participate, and only those individuals should be eligible to receive § 216(b) notice.

66

# IV.

## THE DISTRICT COURT ERRED IN ALLOWING AN ADULT TO REPUDIATE A CONTRACT SIGNED AS A MINOR OVER 18 MONTHS AFTER TURNING THE AGE OF MAJORITY.

It is generally held that minors can void agreements that a party tries to enforce against them. *See St. Paul Fire & Marine Ins. Co. v. Muniz*, 19 Ariz. App. 5, 7, 504 P.2d 546, 548 (1972). Appellee Basch was not a minor, and was nineteen and a half when he tried to repudiate his contract and join this ligation. So he cannot rely on *St. Paul Fire & Marine Ins. Co.* to try to repudiate his signed Arbitration Agreement. *See also Arizona E. R. Co. v. Carillo*, 17 Ariz. 115, 121, 149 P. 313, 315 (1915) (noting that a minor's power to void a contract exists "during infancy"). Instead, Basch must rely on *Modern Woodmen of Am. v. Stevens*, which lets an adult void an agreement previously entered into while he or she was a minor if such disaffirmance is asserted within a reasonable time after reaching the age of majority. *See* 70 Ariz. 232, 235, 219 P.2d 322, 324 (1950) (referencing authorities holding that a minor "will be required to perform according to the terms thereof unless he repudiates the same within a reasonable time after reaching his majority."); *Sheller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 153 (N.D. Ill. 1997) (noting that the "[t]he general rule

67

applicable to all contracts, other than for necessaries, is that the contract of a minor is voidable and may be repudiated by the minor during minority or **within a reasonable time upon achieving majority** absent a ratification.") (emphasis added).  The question before the Court is whether Basch, who received the benefit of the Agreement as an adult for over eighteen months, can now be allowed to repudiate the agreement at age nineteen and a half.  The answer is "no," as Basch did not repudiate his Arbitration Agreement "within a reasonable time upon achieving majority."

## A.
### PUBLIC POLICY AND EQUITY SUPPORT ENFORCING BASCH'S ARBITRATION AGREEMENT.

Enforcing the arbitration agreement regarding the 19-and-a-half-year-old Appellee Basch squares with sound public policy and equity. As courts in this this circuit and across the country have held, an adult plaintiff should be prevented from voiding or disaffirming a contract entered into as a minor when, after becoming an adult, the plaintiff continued to accept the benefits associated with the contract.  *See, e.g.,* *Paster v. Putney Student Travel, Inc.,* CV 99-2062 RSWL, 1999 WL 1074120, at *2 (C.D. Cal. June 9, 1999) (preventing plaintiff, who

68

accepted the benefits of a month-long activities program, from voiding a

forum selection clause in the program agreement signed as a minor);

*Bobby Floars Toyota, Inc. v. Smith*, 48 N.C. App. 580, 584, 269 S.E.2d

320, 323 (N.C. 1980) (preventing car buyer from voiding installment

loan agreement entered into as a minor when he continued to have the

car and make payments before attempting repudiation).  At least one

court has followed the policy rationale in enforcing an employment

arbitration agreement applicable to minors whose employment ended

<u>before</u> the age of majority.  *See Sheller*, *supra*, 957 F. Supp. at 153.

Courts reason that "the infancy defense may not be used

inequitably to retain the benefits of a contract while reneging on the

obligations attached to that benefit."  *E.K.D. ex rel. Dawes v. Facebook,*

*Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012).  However, this is exactly

what Appellee Basch attempts to do here.  As the Agreement states in

its first sentence, "[i]n exchange for my employment or continued

employment as well as the mutual promises contained in this

[Agreement]…Cracker Barrel [] and I agree to use…confidential

binding arbitration…for dispute resolution…".  Basch took this

benefit—employment and continued employment with Cracker Barrel—

69

*for over 18 months after turning 18*—while reneging on his obligations in the Agreement. This is an inequitable use of the infancy defense and courts across the country are in accord. *See e.g. E.K.D. ex rel. Dawes*, 885 F. Supp. 2d at 899 (citing 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) (collecting cases)) ("[i]f an infant enters into any contract subject to conditions or stipulations, **the minor cannot take the benefit of the contract without the burden of the conditions or stipulations**.") (emphasis added). The Court should instruct the district court to enforce the Arbitration Agreement as to Appellee Basch.

## B.
### BASCH'S DELAY OF MORE THAN 18 MONTHS IS "UNREASONABLE."

Although courts generally hold that a "reasonable time" for voiding a minor contact will depend on the particular case at hand, Cracker Barrel submits for all the reasons above that the delay of more than 18 months is unreasonable. *See Norred v. Cotton Patch Cafe, LLC*, 3:19-CV-1010-G, 2019 WL 5425479, at *7 (N.D. Tex. Oct. 22, 2019) (**unreasonable to wait almost one year after turning 18**—in an FLSA action, preventing plaintiff from repudiating an arbitration agreement

70

signed as a minor where plaintiff did not attempt repudiation until almost one year after turning 18 years old); *Bobby Floars Toyota, Inc.*, *supra*, 269 S.E.2d at 323 (**unreasonable to wait 10 months**—preventing car buyer from voiding installment loan agreement entered into as a minor when he continued to have the car and make payments for 10 months before attempting repudiation); *Kelly v. Furlong*, 194 Minn. 465, 467, 261 N.W. 460, 462 (Minn. 1935) (**unreasonable to wait less than 7 months after turning 18**—holding that minor's failure to rescind transactions for a period of slightly less than 7 months after turning 18 was unreasonable). It seems patently unreasonable to suggest that a 19-and-a-half-year-old such as Appellee Basch can legally vote, serve in the armed forces, and enter marriage, but would not have to comply with an arbitration agreement for employment disputes that applies to all other employees. The Court should find that Basch waited too long to repudiate the Arbitration Agreement and instruct the district court to enforce the Agreement as to Appellee Basch.

71

# CONCLUSION

Cracker Barrel respectfully requests the Court reverse and remand this matter with instructions to the district court to evaluate Plaintiffs' motion to send FLSA notice using the one-step mechanism articulated in *Swales*. If the district court still determines that notice is appropriate, the Court should instruct that notice cannot be sent to individuals who are not potential plaintiffs because they (i) signed the Arbitration Agreement as adults and/or (ii) cannot establish specific personal jurisdiction in the forum state. Finally, the Court should find that it is unreasonable to wait over 18 months after turning the age of majority to repudiate a contract and therefore instruct the district court to enforce the Arbitration Agreement as to plaintiff Basch.

Dated: June 14, 2024

By: ____*s/Steven Bernard Katz*_____

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

Steven B. Katz
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
  skatz@constangy.com

Telephone: (310) 909-7775
Facsimile: (424) 465-6630

James M. Coleman
   jcoleman@constangy.com
Jason D. Friedman
jfriedman@constangy.com
12500 Fair Lakes Circle, Suite 300
Fairfax, Virginia 22033-3804
Telephone: (571) 522-6111
Facsimile: (571) 522-6101

COUNSEL FOR PETITIONER CRACKER
BARREL OLD COUNTRY STORE
INCORPORATED

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. PROC. 5(c)(1) because this brief contains fewer than 11,000 words, excluding the parts exempted by FED. R. APP. PROC. 32(f).

This brief complies with the typeface requirements of FED. R. APP. PROC. 32(a)(5)(A) because this brief has been prepared in 14-point, proportionally spaced, Century font, using Microsoft Word 360.

By: _____*s/Steven Bernard Katz*_____
COUNSEL FOR PETITIONERS

# CERTIFICATE OF SERVICE

I certify that on 14, 2024, the foregoing document was transmitted to the Clerk of the United States Court of Appeals for the Ninth Circuit, via the Court's CM/ECF Document Filing System, and electronically served via email to the following counsel of record for Plaintiffs-Respondents:

Nitin Sud (nsud@sudemploymentlaw.com)

Monika Sud-Devaraj (monika@msdlawaz.com)


By: ___*s/Steven Bernard Katz*_____
COUNSEL FOR PETITIONER